IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILIAN H., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20-cv-06489 ) ) Judge Andrea R. Wood |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jilian H. seeks review of the final decision of the Commissioner of Social Security ("Commissioner")[1] denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1381–1383f. Specifically, Plaintiff claims that the Administrative Law Judge ("ALJ") who denied her application erred when she determined that Plaintiff's mental impairments were non-severe and failed to account for those impairments in assessing Plaintiff's residual functional capacity ("RFC"). For the reasons that follow, this Court agrees that the ALJ erred. Thus, the ALJ's decision is reversed and the case is remanded for further proceedings.

BACKGROUND

Plaintiff filed the underlying applications for disability insurance benefits and supplemental security income on August 30, 2018 and September 24, 2018, respectively. (Admin. R. ("A.R.") at 15, Dkt. Nos. 15-1, 15-2.) In her applications, Plaintiff claimed that she was

---

[1] This case was filed when Andrew Saul held the position of Commissioner. Kilolo Kijakazi has been substituted as the proper Defendant pursuant to Federal Rule of Civil Procedure 25(d).

disabled due to her myalgic encephalomyelitis ("ME")[2] and had been unable to engage in enough work activity to meet the criteria of a substantial gainful activity since November 8, 2017. (*Id.* at 17, 190, 199, 244.) Plaintiff's applications for disability insurance benefits and supplemental security income were first denied on January 2, 2019 and denied again on reconsideration on April 16, 2019. (*Id.* at 15.) A hearing was then held before an ALJ on February 26, 2020. (*Id.*)

After the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled at any time between November 8, 2017 and the date of her decision, April 2, 2020. (*Id.* at 15–33.) In her decision, the ALJ determined that Plaintiff's ME and history of Epstein-Barr virus qualified as severe impairments. (*Id.* at 17.) While the ALJ also observed that Plaintiff's medical records revealed a history of bilateral hip impairments, lower extremities and length discrepancy, depression, anxiety, and concentration issues, she found that those medically determinable impairments were non-severe. (*Id.* at 17–21.) As to Plaintiff's mental limitations, the ALJ considered Plaintiff's degree of limitation in the four broad areas of mental functioning, known as the "paragraph B criteria." (*Id.* at 19–21); *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b); *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). Those functional areas are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). The ALJ determined that Plaintiff had mild limitations in each of the four functional areas. (A.R. at 19–21.) Nonetheless, the ALJ concluded that Plaintiff's medically determinable mental impairments were non-severe because they caused no more than mild limitations. (*Id.* at 21.) At the same time, the ALJ stated that the limitations she identified with

---

[2] ME is also known as chronic fatigue syndrome.

respect to the paragraph B criteria were not an RFC assessment and noted that a mental RFC assessment required a more detailed analysis.

Despite finding that Plaintiff had severe impairments as the result of her ME and history of Epstein-Barr virus, the ALJ determined that Plaintiff retained the RFC to perform sedentary work, except that she could never climb ladders, ropes, or scaffolds; could no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, or twist; and would need to be provided a sit-stand option allowing her to stand for 1 to 2 minutes after sitting for 45 minutes. (*Id.* at 23, 32.) In assessing Plaintiff's RFC, the ALJ considered not only Plaintiff's severe impairments but also her bilateral hip impairments and lower extremities and length discrepancy. (*Id.* at 32.) However, as to Plaintiff's mental limitations, the ALJ surveyed the record evidence and concluded that the opinions finding that Plaintiff had no severe mental impairments were more persuasive than the opinions diagnosing Plaintiff with depression, anxiety, or concentration issues. (*Id.* at 29.)

Notably, Plaintiff visited three different providers who opined that she suffered from depression. (*Id.* at 29–32.) One of those opinions came from a physician who had treated Plaintiff and who opined that Plaintiff's symptoms from ME, poor concentration, and depression prevented her from holding even low-stress jobs. (*Id.* at 30, 544–51.) Another opinion came from a psychologist who diagnosed Plaintiff with depression and post-traumatic stress disorder, which the psychologist believed imposed serious limitations on Plaintiff's ability to handle standard work activities. (*Id.* at 30, 346–49, 843.) Further, in connection with her disability insurance benefits and supplemental security income applications, two non-examining state agency psychological consultants reviewed Plaintiff's relevant medical history. (*Id.* at 28, 66–67, 81–83.) One of those consultants opined that Plaintiff had severe anxiety and depression that caused her

3

moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, and mild limitations in understanding, remembering, or applying information and adapting or managing herself. (*Id.* at 28, 67.) That non-examining consultant therefore concluded that Plaintiff's depression and anxiety were severe medically determinable impairments. (*Id.* at 66.) Subsequently, a second psychological consultant found that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (*Id.* at 82.) Unlike the first consultant, the second non-examining consultant determined that Plaintiff's depression and anxiety were non-severe medically determinable impairments. (*Id.*)

Ultimately, the ALJ agreed with the second psychological consultant's determination that Plaintiff's mental impairments were non-severe. (*Id.* at 29.) Moreover, the ALJ rejected as unpersuasive those opinions finding that Plaintiff's mental impairments caused her serious difficulty working. (*Id.* at 29–32.) Among the reasons the ALJ cited for disregarding those providers' opinions included that they appeared to be based only on Plaintiff's subjective complaints, failed to reference the record to support Plaintiff's supposed limitations, and failed to include the providers' treatment notes. (*Id.*) The ALJ also observed that numerous medical records evidenced that Plaintiff had normal mental status examinations. (*Id.*) Although the ALJ herself determined at step two that Plaintiff's mental impairments caused her at least mild limitations, the ALJ made no mention of those limitations when finding that Plaintiff had the RFC to perform sedentary work subject to certain limitations. (*Id.* at 32.)

During the hearing, the ALJ heard testimony from a vocational expert about the availability of jobs to a hypothetical individual who retained Plaintiff's RFC. (*Id.* at 57–61.) The vocational expert testified that a hypothetical individual with Plaintiff's age, education, work

4

history, and RFC could perform Plaintiff's past relevant work as a medical biller. (*Id.* at 32–33, 58.) Yet when the ALJ asked whether the hypothetical individual could do their past relevant work if they were unable to understand, remember, and carry-out no more than simple routine tasks, the vocational expert answered in the negative. (*Id.* at 58–59.) In her written decision, the ALJ cited the vocational expert's testimony and concluded that Plaintiff could perform her past relevant work as a medical biller. (*Id.* at 32–33.) Therefore, the ALJ concluded that Plaintiff was "not disabled." (*Id.* at 33.)

## DISCUSSION

A federal court reviews "an ALJ's disability determination deferentially." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). Its review is confined to the rationales offered by the ALJ and the court asks only whether the decision is supported by substantial evidence. *Shauger v. Astrue*, 675 F.3d 690, 695–96 (7th Cir. 2012). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). The reviewing court's job is not to "reweigh the evidence or substitute [its] own judgment for that of the Commissioner." *Id.* Still, where the ALJ denies benefits, her decision must "build an accurate and logical bridge from the evidence to her conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). On the other hand, remand is warranted when an ALJ's decision contains a legal error. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). That process requires the ALJ to ask, in the following order: (1) whether the claimant is not currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3)

5

whether the impairment meets the criteria of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's RFC renders her unable to perform her past relevant work; and (5) whether the claimant's RFC, age, education, and work experience make her unable to adjust to other work existing in significant numbers in the national economy. *Id.* "A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two, or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Here, the ALJ found at step four that Plaintiff was not disabled because she had the RFC to perform her past relevant work. Plaintiff argues that the ALJ's decision cannot stand because the ALJ committed a legal error in finding that Plaintiff's mental impairments were non-severe at step two. In addition, Plaintiff argues that the ALJ erred at step four by finding that Plaintiff could perform her past relevant work based on an RFC that did not account for Plaintiff's mental limitations. Finally, even if the ALJ committed no error, Plaintiff argues that the ALJ's decision cannot stand because, at the time of her decision, the ALJ derived her authority to adjudicate Plaintiffs' applications from a Commissioner who was removable only for cause, which violates principles of separation of powers under the U.S. Constitution. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). Given that this Court must strive to "avoid making unnecessary constitutional decisions," *Koger v. Bryan*, 523 F.3d 789, 801 (7th Cir. 2008) (internal quotation marks omitted), the Court will only consider the constitutional issue in the event it concludes that the ALJ committed no reversible error.

As an initial matter, the Court rejects Plaintiff's assertion that the ALJ committed a reversible error at step two in finding that Plaintiff's mental impairments were non-severe.

6

Plaintiff is correct that the step two determination "is a *de minimis* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (internal quotation marks omitted). Nonetheless, a determination of severity at step two "is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even **one** severe impairment." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Here, the ALJ found that Plaintiff had two severe impairments and therefore proceeded to step three. Thus, any error the ALJ made in failing to classify Plaintiff's mental impairments as severe was harmless. *Id.* ("Here, the ALJ categorized two impairments as severe, and so any error of omission was harmless.").

However, the ALJ's determination at step two that Plaintiff's mental impairments were non-severe did not, by itself, permit her to disregard those impairments at subsequent stages of the sequential evaluation process. On the contrary, "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment. A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citations omitted). Despite herself finding that Plaintiff had mild mental limitations as to each of the four paragraph B criteria, the ALJ did not account for those limitations in her RFC assessment.[3] Nor did she provide any substantive explanation as to why she declined to consider Plaintiff's mental limitations in determining her RFC. Instead, the ALJ reviewed the medical records indicating that Plaintiff's mental impairments caused greater-than-mild limitations and

---

[3] Notably, even the non-examining psychological consultant whose report the ALJ found persuasive observed that Plaintiff had mild mental limitations even though he concluded that none of her mental impairments were severe. (A.R. at 82.)

discussed why they were not persuasive. At multiple points in her analysis, the ALJ explained that she found "no evidence of an impairment that would last 12 continuous months." (A.R. at 29, 31.) But there is no durational requirement that must be met before a non-severe impairment may be considered in the RFC. *E.g.*, *Blanchard v. Berryhill*, No. 16 C 2117, 2017 WL 5191846, at *2 (N.D. Ill. Nov. 9, 2017).

Having found at step two that Plaintiff had non-severe mental impairments that caused her mild limitations in all four areas of mental functioning, the ALJ was required "to assess [them] in conjunction with Plaintiff's RFC." *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019) (internal quotation marks omitted). Moreover, at step two, the ALJ herself recognized that

> [t]he limitations identified in the "paragraph B" criteria are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(A.R. at 21.) Yet the ALJ never conducted the promised "more detailed assessment." Notably, numerous courts in this District "have remanded where the ALJ used language identical to the one used at step two here and where the ALJ did not offer any analysis connecting the functional limitations found at step two and the RFC." *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *4 (N.D. Ill. Apr. 8, 2022); *see also Thomas G. v. Kijakazi*, No. 20-cv-5860, 2022 WL 4234967, at *4 (N.D. Ill. Sept. 14, 2022); *Charles B. v. Saul*, No. 18 C 1377, 2019 WL 3557055, at *5 (N.D. Ill. Aug. 1, 2019). "If the ALJ intended to incorporate restrictions caused by [Plaintiff's] mild mental limitations into the RFC, she was obligated to explain how she did so. Conversely, if the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC, she was obligated to explain that conclusion." *Thomas G.*, 2022 WL

8

4234967, at *5. The absence of either "of these competing explanations leaves the Court unable to follow the basis of [the ALJ's] reasoning and, therefore, requires remand so that the ALJ can make her rationale clear." *Id.*; *see also Pamela J.B. v. Saul*, No. 19 C 6800, 2021 WL 963765, at *5 (N.D. Ill. Mar. 15, 2021) ("The error here is one of articulation—or, more accurately, a lack thereof." (internal quotation marks omitted)).

The ALJ's failure to explain properly how Plaintiff's mental limitations affected her RFC analysis weighs particularly heavy here, given the ALJ's conclusion that Plaintiff could perform her past relevant work as a medical biller. As the vocational expert testified, such work is skilled work. (A.R. at 32–33, 58.) And even mild limitations in one or more of the four areas of mental functioning may preclude Plaintiff from performing either skilled or semi-skilled work. *Cheryl C.*, 2019 WL 339514, at *3. Indeed, the vocational expert himself testified that an individual who can understand, remember, and carry-out no more than simple routine tasks would not be able to do Plaintiff's past relevant work (A.R. at 58–59.) Relatedly, the ALJ's failure to consider properly Plaintiff's mental limitations in the RFC caused her to not fully account for those limitations in the hypothetical questions she posed to the vocational expert, an omission that is a basis for remand. *Anthony W.*, 2022 WL 1062334, at *5 ("[T]he ALJ's failure to account for all of [the plaintiff's] functional limitations in the question posed to the [vocational expert] and the ALJ's RFC assessment requires remand."); *see also Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the [vocational expert] must account for these limitations.").

In sum, the Court finds that the ALJ erred by failing to explain whether and how she accounted for Plaintiff's mild mental limitations in her RFC analysis. To the extent the ALJ

9

determined that Plaintiff's mental limitations did not negatively affect her ability to work, even when considered together with Plaintiff's other severe and non-severe impairments, the ALJ further erred by omitting her reasons for reaching that conclusion. Consequently, the ALJ's decision must be reversed and remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income (Dkt. No. 16) is granted, and the Commissioner's motion for summary judgment (Dkt. No. 23) is denied. The ALJ's decision is reversed, and the case is remanded for further proceedings consistent with this opinion.

ENTERED:

Dated: September 29, 2022

_____
Andrea R. Wood
United States District Judge